JOHN R. BURTON and wife, appellants *vs.* JOSHUA S. BURTON and wife and MARY SHORT, appellees.

JOSHUA S. BURTON and wife and MARY SHORT, appellants *vs.* JOHN R. BURTON and wife, appellees.

A testator devised that the residue of his *estate*, both real and personal should be divided between his wife and two half sisters, "as the law directs;" *held,* that the wife took but a *life estate* in one half the realty; (the testator having died without children.)

APPEAL from chancery. Before all the law judges.

This was an appeal from the decree of the chancellor in Sussex, in a case of partition under the will of John C. Burton, which after several bequests of personal property to his wife, Elizabeth Burton, devised as follows:—" Item, my will and desire is, that the residue of my estate both real and personal, shall be divided between my said wife Elizabeth, and my two half sisters, viz : Ruth Burton and Mary Short, as the law directs; giving my said wife her lawful part of the said residue." And he made his wife sole executrix.

The testator died seized in fee of several tracts of land in Sussex county. John R. Burton and wife, who was the widow of John C. Burton, filed their petition in chancery for partition of the lands, &c. of which John C. Burton died seized, claiming *one half in fee simple* for the widow.

The chancellor decreed partition and assignment *in three equal parts,* and that one part should be assigned in severalty and *in fee* to the petitioners in right of the widow; and one third to each of the half sisters *in fee.* From this decree both parties appealed. The appeal of the respondents came up first for hearing. The error assigned was, that the chancellor decreed a partition of the lands in thirds and in fee; whereas he should have decreed to the petitioners

only an estate *for life*, in right of the wife, in one third of the real estate.

*Houston*, for J. S. Burton and wife and Mary Short, contended, that the widow was entitled to only one third of the land for life, as she would have been entitled to the same as dower; with remainder to the heirs at law. She could not be entitled to a half, for this is not a case of intestacy, and the act of assembly gives the the widow (without children) one half only in case of an intestacy. The testator could not then have referred to the intestate law when he devised to his widow her *lawful* part, but must have referred to the dower law, the act of 1816, which gives the widow only a third.

If this be not clear, the devise is void for uncertainty. What is the lawful part? What law is referred to; the common law, the act of 1816, or the intestate law? By the common law the land would descend to the half sisters in severalty, in fee and in equal shares, per capita, and not per stirpes; the devisees being named, with a direction to divide equally. (2 *Harr. Rep.* 103; *Doe ex dem. Kean* vs. *Hoffecker.*) Under the intestate law, the wife would take one half; and under the act of 1816 one third, for her life. Now, if it be not clear which of these rules the testator referred to, as that which the law would apply to the subject of his devise, the devise is void. (21 *Law Lib.* 206, 351; 8 *Ibid* 142, 262; *Bac. Ab. tit. devise*; 3 *Barn. & Cress.* 825, *Thomas* vs. *Thomas.*)

*Ridgely*, for John R. Burton and wife, thought that the devise had a clear reference to the act of 1827, the intestate law. The testator had no children; and, had he died intestate, his wife would have been entitled to one half of the land for life. With this view of the law, he divided·his land into two parts; to his wife one part, and his two half sisters the other part, and refers to the law to show that these parts should be *equal.* Then as to the interest which his widow was to take in this share he used words which carry not merely a life estate but the fee. The word "estate" passes not merely the land, but all the interest of the testator in the land. (22 *Law Lib.* 220, 412.)

If this be not the construction as to the widow, the half sisters take but a life estate, for the words are the same. Yet this cannot be, for the testator evidently intended to dispose of all his estate real and personal.

*Houston*, in reply:—Had the petitioners claimed under the act of

1827, the intestate law, and asked for a half of the land for life, it would not have been resisted; but when they claim under that act in reference to the share, and abandon it, claiming under the common law, as to the interest in that share, thus claiming a half in fee simple, we were compelled to resist this claim. And now we come to ask what is the true effect and operation of this devise.

The argument on the other side proceeds on the technical meaning of the word "estate," as if that could not be controlled by the intention of the testator. Whenever it appears that the testator uses the word estate as referring to the corpus of the land and not to the title or interest therein, it has no effect to enlarge the devise. (22 *Law Lib.* 221, 223.)

The fact that the testator had no children at his death, cannot be considered by the court in the construction of his will.

And if the court can resort to inferences, they will presume that the testator referred to the act of 1816, which is the general law of dower, rather than to the intestate law of 1827; when the fact was that he was not about to die intestate as to any of his property.

*The chancellor* stated the grounds of his decree.

He regarded 1st, the general intention of the testator to dispose of all his estate. 2d. That in the distribution it was to be equal; and 3d. That as he named the parties who were to take, they took per capita, and not per stirpes. He thought the word "estate" as used by the testator, was to be taken in its proper sense, and carried the fee simple in the land, and that there was nothing to show a contrary intention; and that the will had reference to cases of testacy, and not of intestacy, for the law of distribution. The testator could not be considered as having reference to the intestate law as applicable to the land which he was by the act of making a will, taking out of the operation of that law.

*By the Court:*

BOOTH, *Chief Justice.*—By the record in this case, it appears that John C. Burton, the testator, being seized in fee and possessed of certain real and personal estate, and having a wife named Elizabeth, now the wife of John R. Burton, and two half sisters, Ruth Burton and Mary Short, but no child, children or issue, made his last will and testament, bearing date the 9th of January, A. D. 1840. The testator soon afterwards died without issue, leaving to survive him the said Elizabeth, his wife, and his two half sisters before named, who are his heirs at law. His will was proved in due form. His wife, Elizabeth, seems to have been the peculiar object of his bounty

in the disposition of his personal estate; for he gives to her the greater part of it absolutely and forever, to wit:—all his household and kitchen furniture, his slaves, his two best horses, his gig and harness, all his stock of cattle, ten head of hogs and twenty head of sheep of the first choice, his cart, ox-wagons, all his farming utensils and five hundred dollars in cash. But in the disposition of his real estate, his two half sisters are objects of his benevolence, as well as his wife; and therefore he devises it, and the residue of his personal estate to all three of them, in the next item of his will, in these words : " my will and desire is, that the residue of my estate, both real and personal, shall be divided between my said wife Elizabeth, and my two half sisters, viz:—Ruth Burton and Mary Short, as the law directs, giving my said wife her lawful part of the said residue." The question raised in the argument is this: what are the respective shares of the wife, and of the two half-sisters in the real property devised to them ; and what quantity of estate or interest does each take in her share ?

The doubt or difficulty, if there be any, arises from the misapplication of principles of law brought into the case, which have no bearing on the question ; and from abandoning the obvious and common sense view of the devise, which the very words of it present. The testator says, that the residue of his estate, both real and personal, shall be divided between his wife and his two half sisters,—not equally, or he would have said so,—but *as the law directs*; that is, into such parts or shares as are prescribed in such case, by some law of the state. It is his will, that the residue of his real and personal estate shall be so divided. To what law can it be rationally supposed he referred, for the purpose of designating a division? Surely to no other law than such as directs the distribution of personal, and the division of real estate, in a case where the owner dies without issue, leaving a widow and two half-sisters to take his property. No other law could possibly effectuate his intention; and therefore to suppose that he referred to any other, is contrary to reason. What law then of the State of Delaware directs the division of a man's real and personal estate in the condition in which this testator was placed, without child, children or issue, and leaving a wife, and two half-sisters, the latter being his heirs at law ? None other than the law relating to the estates of intestates; and the testator, therefore, must have intended that law, and no other. But it is said, the intestate law cannot be applied to the real estate under this devise, because this case is not one of intestacy. The answer is

plain. The directions of the intestate law are applied to the present case, because such is the testator's *will.* His referring to that law and ordering the residue of his estate to be divided as the law directs, makes it part of his will, as much so as if he had inserted in the will the very directions of the intestate law in the case of a man dying without issue, leaving a wife, and two half-sisters. The second item of the will stands then precisely as if the testator had said " the residue of my estate both real and personal, shall be divided between my said wife Elizabeth, and my two half sisters, viz:—Ruth Burton and Mary Short, as the law relating to intestates' estates directs, in a case of intestacy as to said residue; giving my wife her lawful share; namely, such share as she would take under the intestate law."

The intestate law being plainly the law referred to by the testator, the directions of that law under the devise in this case must be pursued in the division of the testator's real estate, not only to designate the shares into which it is to be divided, but the quantity of interest which passes to each party ; the word " estate " used by the testator, passing not only the lands, but all his title in fee simple. The widow therefore, takes an estate for her life in one moiety; and subject to such life estate, the two half sisters take an estate in fee simple in the whole. My opinion is, that the decree of the chancellor be reversed, and that partition be made among the parties according to their respective shares aforesaid : that for this purpose, the premises be divided into four equal parts; that two of those parts being, the one moiety of the whole premises, be allotted to John R. Rurton and Elizabeth his wife, in her right, to hold the same in severalty, during the term of her natural life ; with remainder in fee simple, to Ruth Burton and Mary Short, to be equally divided between them : that one other of said fourth parts be allotted to Joshua S. Burton and Ruth his wife, in right of the said Ruth, to hold the same in severalty, to them, and to the heirs and assigns of the said Ruth : and that the remaining one of the said fourth parts be allotted to the said Mary Short, to hold the same in severalty, to her, the said Mary Short, and to her heirs and assigns.

HARRINGTON, *Justice :*—I think the intention of this will is very plain, so plain as to control the technical force of the words, if there was any conflict, which I think there is not. The testator was without children, and his heirs at law were two half sisters. His wife was evidently an object of his bounty, and to advance her was clearly the reason of his making a will. This he does largely by bequests

of personal property, slaves, and a sum of $500 in money, and then comes the provision that the residue of his estate, both real and personal, shall be divided between his said wife, Elizabeth, and his two half sisters, viz: Ruth Burton and Mary Short, as the law directs, giving his said wife her lawful part of the said residue. There can scarcely be a doubt that he meant by this to leave the division and distribution of his real estate as the law would dispose of it in case of intestacy; for though he made a will, it is evident that it was made for other purposes than that of disposing of the land out of its legal course of descent, that purpose was answered by the liberal advancement of his wife out of the personalty; and when he came to the land he merely expresses the will and desire that it shall be divided between.his wife and two half sisters as the law directs, giving to the wife her lawful part thereof. I know of no terms in which he could have more plainly expressed his purpose not to controvert the legal descent of the land, or in other words to leave it precisely as if he had made no will; nor can there be any doubt as to what law of descent he referred to; there is but one law regulating the descent as between widow and heir at law, and that is the intestate law of 1827; the act of 1816 is an act which fixes the widow's right of dower as against creditors, and protects it from the incumbrances of the husband.

In my opinion, then, the widow of John C. Burton took under the will of her husband one half of his real estate for life, and the two half sisters the other half in fee, with remainder also in fee in the half devised to the widow.

It is true, that where a devise is to stocks and representatives of stocks in the same degree, and the persons are all named, they take per capita, and not per stirpes; but this is not the case of a devise to stocks and representatives of stocks; and if it were there is such a manifestation of intention as would control it. Here is not only the direction to divide the estate *between* the wife and the two half sisters, but the manner of the division is to be *as the law directs*, giving the wife her *lawful* part. By this is meant the intestate law, which directs the division to be one-third to the widow for life; or, in case there are no children or issue of children, then one half to the widow for life. This ambiguity in the will is settled by the fact appearing in the cause, that there were no children or issue of children, a fact to which we necessarily look in construing this will.

I think, therefore, that the decree of the chancellor should be re versed, so far as it directs an assignment to the widow of one-third

in fee; and that the assignment should be to her of one moiety, but only for life.

LAYTON, *Justice*:—We all agree, that the testator, by the use of the words, " the residue of my estate both real and personal," intended to dispose of the residue of his real estate *in fee:* because unless we give to the word "estate" as used in this will, that enlarged signification, the half sisters of the testator would take, under the will, but an estate for life, for he uses no words of inheritance, and he would have died intestate as to the fee.

It is manifest the testator did not intend to die intestate of any portion of his estate. It appears then, that he has divised the residue of his real estate in *fee*, to his wife, Elizabeth, and to his two half sisters, Ruth Burton and Mary Short. That he intended to give to his wife an estate of inheritance in his real estate, may be gathered from the facts, 1st. That she is evidently the peculiar object of his bounty ; and 2d. That he very well knew, that without any will at all, she would have taken just such an estate under the intestate law, as that which the construction contended for assigns her. But he intended to enlarge her interest in his real estate, by devising a portion of it to her in fee. Further, such a construction as the one referred to, does, in my judgment, vacate that part of the will altogether. If the testator has devised only the same estate that the law would give, the devisees take by descent, and not by devise.

The next question is, as to the quantum, or part, of the estate which the testator intended his wife and two half sisters should take. I think he intended his wife should have the one half of his estate in *fee*, and his two half sisters the other half in fee. He devises his estate in the residue, to his wife, Elizabeth, *and* to his two half sisters; thus showing by the use, and position of the copulative conjunction *and*, that he intended to place his wife in apposition, and equal in interest to his two half sisters. This idea is rendered the more certain, by the express direction he has made of the mode in which it should be divided ; and of the "part," or quantum which his wife should take. The fee having been disposed of to his wife, and two half sisters, "he desires," that the same shall be "divided between" them, " as the law directs," giving his said wife her lawful part of the said *residue* :—what residue? why the *residue in fee*, of his real estate. He refers, I think, by the words " as the law directs," to the intestate law of this State, as the only law applicable to the division of real estate, between the wife and heirs at law of a deceased man : and with a view only of ascertaining the part, or quan-

tity, or number of acres that each should take, does he refer to this law. He knew the condition of his family, that he had no issue, and he refers to the law for the division of his real estate, for the sake of convenience, and of brevity of expression.

This is a question of construction entirely, and it strikes me, that the construction I have given to this will, is the one most consonant with the testator's *intention.* It is a known rule in the construction of wills, that the intention of the testator is to govern, whenever that intention can be clearly ascertained.

Additionally, I would remark, that the testator having disposed of the whole of his interest in the residue of his real estate, desired that the same should be divided between his wife and his two sisters. I cannot see how that division can be effected in this court, according to the construction that the wife takes but a life estate. In such case no complete division can take place till the death of the wife. The only partition which could now be effected between the parties, would be to assign to the wife one half of the devised premises for term of her life, and the other half to the two sisters, their heirs and assigns. No division of the inheritance of the wife's half could take place till after her death. Then another partition of the premises must be made. In what manner shall that partition be made between the sisters, after the death of the wife? Of the one half theretofore possessed by the wife, for her life? or would the *whole* of the real estate of the testator, including the half formerly assigned to the sisters, be regarded as the estate to be divided? This would appear to be the reasonable course of proceeding in partition.

The construction I give to the will, disembarrasses the subject of these difficulties, and effectuates a full, perfect and entire division at once, between the devisees, the objects of the testator's bounty ; and this appears to have been the desire of the testator.

Decree reversed and assignment ordered in moieties, one half to John R. Burton and wife for life ; the other half to be divided equally, in severalty, in fee, between Joshua S. Burton and wife and Mary Short.